UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOHN ALBIN, Plaintiff,

v. Civil Action No. 3:19-cv-576-DJH

LOUISVILLE METRO GOVERNMENT
et al., Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff John Albin and his girlfriend were stopped and questioned by three Louisville Metro Police Department officers after getting out of a parked car. (Docket No. 1-2, PageID # 11) Albin alleges that the officers then unlawfully searched his car without consent and that he was unlawfully arrested for being a felon in possession of a firearm despite having no prior felony convictions. (*Id.*, PageID # 13-16) Albin originally filed his complaint in Jefferson Circuit Court, alleging state-law claims and violations of 42 U.S.C. § 1983. (*Id.*, PageID # 8) Defendants removed the action to this Court on August 13, 2019. (D.N. 1) Defendants Louisville Metro Government and Steve Conrad now move to dismiss all of Albin's claims against them. (D.N. 5) For the reasons explained below, the defendants' motion to dismiss will be granted.

### I.

The Court "takes the facts only from the complaint, accepting them as true as [it] must do in reviewing a 12(b)(6) motion." *Siefert v. Hamilton Cty.*, No. 18-4179, 2020 U.S. App. LEXIS 6671, at \*3 (6th Cir. Mar. 3, 2020) (citing Fed R. Civ P. 12(b)(6)). On July 25, 2018, Albin and his girlfriend, Amber Smith, were sitting in his parked car outside the home of Smith's brother. (D.N. 1-2, PageID # 11) As they got out of the car, they were approached by three LMPD officers. (*Id.*) Officer Charles Meek questioned Albin and his girlfriend and asked Officer Michael Pugh

1

to "take [Albin] and Smith's drivers licenses to the squad car to check police databases on the computer." (*Id.*, PageID # 12) Meek asked Smith if there was anything inside the vehicle, to which she responded, "No, shouldn't be." (*Id.*, PageID # 13) Meek asked Smith if she would "mind if [he] took a look," and Smith shook her head no and motioned toward the vehicle. (*Id.*) Meek then told a third officer to search Albin's vehicle. (*Id.*) Although Smith had informed Meek that the car belonged to Albin, Meek did not ask Albin for permission to search the vehicle. (*Id.*, PageID # 11, 13)

Upon searching Albin's car, the unnamed officer discovered a handgun, which Albin confirmed belonged to him. (*Id.*, PageID # 13) Meek asked Albin if he had ever been convicted of a felony, to which Albin responded, "No." (*Id.*) Meek returned to the passenger side of the patrol car to check CourtNet while Pugh questioned Albin. (*Id.*) Pugh asked Albin about his criminal history, and Albin informed Pugh that he had a misdemeanor record. (*Id.*, PageID # 14) As Meek was searching CourtNet, Pugh informed him that Albin "said he had some [possession of a controlled substance] charges but they were amended down to misdemeanors." (*Id.*) When the search results confirmed both of the cases that Albin had described, Pugh remarked, "And it looks like he is right." (*Id.*)

Meek continued to search CourtNet before calling Pugh back to the car, telling him that it showed Albin was convicted of a felony for possession of a controlled substance and "sentenced December 22 of last year." (*Id.*) Meek said, "That's a felony!" and Pugh asked whether that meant Albin was a "10-15 for felon in possession of a firearm." (*Id.*) Meek responded, "Yep," and Pugh approached Albin to arrest him. (*Id.*) Albin explained to Pugh that he was not a convicted felon, but Pugh arrested him and "charged him with the offense of Possession of a Firearm by a Convicted Felon." (*Id.*) Albin was detained at Louisville Metro Corrections for eight days before he was

released on August 1, 2018. (*Id.*) On August 6, 2018, Albin's criminal case "was dismissed without prejudice and without a stipulation of probable cause because [Albin] is not a felon." (*Id.*)

This action was originally filed in Jefferson Circuit Court against Louisville Metro, Conrad, Meek, Pugh, and an "unknown officer."[1] (D.N. 1-2) Defendants removed the case to this Court on August 13, 2019. (D.N. 1) Albin asserts claims under 42 U.S.C. § 1983, as well as state-law claims of false imprisonment; intentional infliction of emotional distress; negligence; negligent supervision, hiring, and training; and malicious prosecution. (*Id.*, PageID # 16-23) Louisville Metro and Conrad now move to dismiss all claims against them, arguing that (1) they are entitled to sovereign immunity for Albin's state-law claims; (2) Conrad is also entitled to qualified immunity for Albin's state-law claims; and (3) Albin has failed to effectively plead the claims raised against them. (D.N. 5, PageID # 50-59)

## II.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

---

[1] The "unknown officer" is not listed as a defendant in the federal case.

In their motion to dismiss, the defendants address only those claims raised against Conrad and Louisville Metro: Counts I, II, V, VI, and VII. (D.N. 5-1, PageID # 48) Although Albin concedes that Louisville Metro is "immune from suit in this action" (D.N. 6, PageID # 62), Louisville Metro is not immune from suit for Albin's claims under 42 U.S.C. § 1983, for the reasons discussed below. Nevertheless, because the Court also finds that Albin failed to adequately plead his § 1983 claims, those claims will still be dismissed.

**A.    Immunity**

    **1.  Sovereign Immunity**

Albin asserts claims under § 1983 against Louisville Metro and against Conrad in his official capacity as the Chief of the Louisville Metro Police Department. (D.N. 1-2, PageID # 16-19) Suing Conrad "in his official capacity is the equivalent of suing his employer," Louisville Metro. *Duerling v. Claud*, No. 5:15CV-P33-TBR, 2015 U.S. Dist. LEXIS 64505, at *7 (W.D. Ky. May 18, 2015) (citing *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008)). "The Court will address [the defendants'] official capacity claims under federal and state law separately, as the analysis is different between the two schemes." *Scherzinger v. Bolton*, No. 3:11-CV-11-H, 2013 U.S. Dist. LEXIS 86568, at *35 (W.D. Ky. June 19, 2013).

        **a.  Federal Claims**

"While [p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, a person sued in his official capacity stands in the shoes of the entity he represents." *Id.* (quoting *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)) (internal quotation marks omitted); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the government entity."). "State entities enjoy Eleventh Amendment immunity from actions that

assert a violation of federal civil rights." *Id.* at *36 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). "However, this immunity extends to agencies acting as arms of the state, and not to cities, counties, or other political subdivisions." *Id.* (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)); *see also Jefferson Cty. Fiscal Ct. v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004) ("The United States Supreme Court[] 'has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a slice of state power.'" (quoting *Lake Cty. Estates v. Tahoe Planning Agency*, 440 U.S. 391, 401 (1979))).

"It is well established that a municipality[] such as [Louisville/Jefferson County Metro Government] may be held liable under 42 U.S.C. § 1983." *Scherzinger*, 2013 U.S. Dist. LEXIS 86568, at *36 (quoting *Livingston v. Louisville/Jefferson Cty. Metro Gov.*, No. 3:04CV-593-R, 2007 U.S. Dist. LEXIS 13991, at *5 (W.D. Ky. Feb. 27, 2007)). "Suing a municipal officer in his official capacity under 42 U.S.C. § 1983 is the same as suing the municipality itself, so the same immunity principles apply to [Conrad] in [his] official capacities." *Id.* at *37 (citing *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006)). Thus, Louisville Metro and Conrad "are not entitled to immunity from [Albin's] federal claims when sued in their official capacities." *Id.*

### b. State-Law Claims

In addition to federal claims under § 1983, Albin advances several state tort claims against Conrad and Louisville Metro. (D.N. 1-2, PageID # 21-23) "Unlike federal courts, Kentucky courts recognize that 'a county government is cloaked with sovereign immunity.'" *Scherzinger*, 2013 U.S. Dist. LEXIS 86568, at *38 (citing *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003)). "While Louisville Metro is not a county, it is a consolidated local government[,] [a]nd the Kentucky General Assembly has granted to consolidated local governments 'the same sovereign

5

immunity granted [to] counties.'" *Thieneman v. Smith*, No. 3:17-cv-292-DJH, 2018 U.S. Dist. LEXIS 51272, at *11 (W.D. Ky. Mar. 26, 2018) (quoting Ky. Rev. Stat. § 67C.101(2)(e); *see also Reyes v. Salsman*, No. 3:15-CV-587-GNS-DW, 2016 U.S. Dist. LEXIS 6435, at *2 (W.D. Ky. Jan. 20, 2016)). Thus, Louisville Metro is entitled to sovereign immunity for Albin's state-law claims.

"[W]hen an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's . . . actions are afforded the same immunity, if any, to which the agency, itself, would be entitled." *Scherzinger*, 2013 U.S. Dist. LEXIS 86568, at *38 (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). As an employee of Louisville Metro, Conrad is "performing governmental functions and [is] entitled to immunity." *Id.* at *39. Accordingly, the state-law claims asserted against Conrad in his official capacity must also be dismissed on the basis of sovereign immunity. *See id.*

**2. Qualified Immunity**

The defendants argue that Conrad is also entitled to qualified immunity for Albin's state-law claims against him in his individual capacity. (D.N. 5, PageID # 53) In his response, Albin makes no argument as to whether Conrad is entitled to qualified immunity beyond stating that "dismissal is premature at this stage of the case" and that he objects "to the motion to dismiss on the basis that discovery in this case is in its infancy." (D.N. 6, PageID # 62-63)

"Qualified immunity, pleading requirements, and Rule 12(b)(6) have a complicated relationship." *Seifert*, 2020 U.S. App. LEXIS 6671, at *13. "At times, [the Sixth Circuit has] said that courts should refrain from using qualified immunity at the motion-to-dismiss stage." *Id.* (citing *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015)). "After all, qualified immunity is an affirmative defense, not an element of a cause of action . . . [a]nd Federal Rule of Civil Procedure 8(a) requires only that a plaintiff *state* a claim, not that a plaintiff show that he can

6

overcome an affirmative defense." *Id.* (internal citations omitted). The Sixth Circuit has "also said that the fact-intensive nature of qualified immunity makes it often a bad fit for Rule 12(b)(6)." *Id.* (citing *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)).

But "[d]efendants may raise the qualified immunity defense in response to a 12(b)(6) motion because it is 'an immunity from suit rather than a mere defense to liability.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "That is why some claims must 'be resolved prior to discovery.'" *Id.* (quoting *Pearson*, 555 U.S. at 231-32). "Thus, despite the general preference to save qualified immunity for summary judgment, sometimes it's best resolved in a motion to dismiss." *Id.* "This happens when the *complaint* establishes the defense." *Id.* (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016)). That is not the case here.

### a. Qualified Immunity for § 1983 Claims

"In the interest of protecting public officers in the course of performing their discretionary duties from unduly onerous lawsuits under § 1983, the Supreme Court has recognized 'qualified immunity' for such officers, 'shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Lyons v. City of Xenia*, 258 F. Supp. 2d 761, 775 (S.D. Ohio 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1986)). "Qualified immunity is a defense only to individual capacity claims." *Meogrossi v. Aubrey*, No. 3:09cv-301-JDM, 2011 U.S. Dist. LEXIS 35254, at *16 (W.D. Ky. Mar. 31, 2011).

Under federal qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 U.S. Dist. LEXIS

201314, at *23 (W.D. Ky. Nov. 26, 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Determining whether [a] defendant[] [is] entitled to qualified immunity involves two questions: First, based on applicable law and the facts viewed in the light most favorable to the plaintiff, has a constitutional violation occurred?" *Id.* at *24 (citing *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002)). "Second, if the answer to the first question is yes, was the constitutional right 'clearly established' at the time of the violation[?]" *Id.* (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). "To survive a motion to dismiss on qualified-immunity grounds, both inquiries must be resolved in the Plaintiff's favor." *Hoskins v. Knox City*, No. 17-84-DLB-HAI, 2018 U.S. Dist. LEXIS 42694, at *54-*55 (E.D. Ky. Mar. 15, 2018) (citing *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015)).

"The [p]laintiff bears 'the burden of showing that' the [d]efendants are 'not entitled to qualified immunity.'" *Id.* at *55 (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015); *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)). As explained above, Albin has made no argument as to whether Conrad is entitled to qualified immunity. (*See* D.N. 6) However, Albin's complaint does not clearly establish the defense of qualified immunity for the § 1983 claims because it does not include any facts or allegations as to whether Conrad took actions that violated Albin's constitutional rights. (*See* D.N. 1-2) It thus would be inappropriate to dismiss Albin's § 1983 claims against Conrad on the basis of qualified immunity at this stage. *See Seifert*, 2020 U.S. App. LEXIS 6671, at *14.

### b. Qualified Official Immunity for State-Law Claims

Likewise, Albin's complaint does not establish that Conrad is entitled to immunity for the state-law claims. *Id.* Under state law, "an official sued in his or her individual capacity 'enjoy[s] only qualified official immunity, which affords protection from damages liability for good faith

judgment calls made in a legally uncertain environment.'" *Peerce*, 132 S.W.3d at 833 (quoting *Yanero*, 65 S.W.3d at 522). "Qualified immunity under Kentucky law[] 'protects officials from liability for discretionary acts, taken in good faith, within their scope of authority.'" *Penman*, 2018 U.S. Dist. LEXIS 201314, at *25 (quoting *Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir. 2011)). "Thus, if the discretionary act is taken in bad faith, qualified immunity does not apply. Bad faith is '[t]he opposite of good faith, and it is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.'" *Id.* at *25-*26 (quoting *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 483 (Ky. 2006) (citations omitted)). Accordingly, in order to determine whether Conrad is entitled to qualified immunity for Albin's state-law claims, the Court must first consider whether the challenged actions were discretionary.

Albin alleges that Conrad is liable for the actions of the officers as their employer and supervisor, and for negligently hiring, training, and supervising the officers. (D.N. 1-2, PageID # 21-23) "[T]he Supreme Court of Kentucky has 'found that supervising the conduct of others is a duty often left to a large degree—and necessarily so—to the independent discretion and judgment of the individual supervisor." *Juillerat v. United States*, No. 3:16-cv-276-TBR, 2016 U.S. Dist. LEIXS 145936, at *21 (W.D. Ky. Oct. 21, 2016) (quoting *Haney v. Monskey*, 311 S.W.3d 235, 244 (Ky. 2010), *as corrected* (May 7, 2010)). But "when supervising employees involves simply 'enforcing known policies,' supervision is a ministerial act." *Id.* (citing *Finn v. Warren Cty., Ky.*, 768 F.3d 441, 449 (6th Cir. 2014)). At this early stage, the Court is unable to determine whether Conrad was engaged in discretionary or ministerial acts because Albin's complaint does not contain any factual allegations as to this issue. *Cf. Juillerat*, 2016 U.S. Dist. LEXIS 145936, at *22 (finding that the plaintiff's allegation Chief Conrad failed to supervise LMPD officers' conduct "to ensure their conduct met the standard of ordinary police officers"

represented a ministerial function because it "appear[ed] to suggest that Chief Conrad failed to adequately *enforce* LMPD policies to ensure officers' compliance with those policies"). Thus, at this point it would also be inappropriate to dismiss Albin's state-law claims against Conrad on qualified-immunity grounds as the complaint does not establish the defense. *See Seifert*, 2020 U.S. App. LEXIS 6671, at *14.

**B.      Failure to State a Claim**

The Court has already found that Albin's state-law claims against Louisville Metro and Conrad in his official capacity must be dismissed due to sovereign immunity. *See supra* part II.A.1.b. For the reasons explained below, the Court will also dismiss Albin's § 1983 claims and his remaining state-law claims against Conrad.

**1.      42 U.S.C. § 1983**

Albin asserts claims under § 1983 for unlawful arrest, search, and seizure in violation of the Fourth and Fourteenth Amendments. (D.N. 1-2, PageID # 16-18) Specifically, Albin alleges that the individual officer Defendants "were acting under the color of state law in their capacity as Louisville Metro Police Department officers and their acts or omissions were conducted within the scope of their official duties or employment"; and that he "had a clearly established constitutional right under the Fourth Amendment to be secure in his person" from unreasonable search and seizure. (*Id.*) As noted by the defendants, however, Albin makes no allegations as to any actions taken by Conrad, nor does he contend that the alleged constitutional violation was pursuant to a policy, custom, or practice of Louisville Metro. (D.N. 6, PageID # 53, 57) As explained below, these omissions are fatal to his claims against Conrad and Louisville Metro.

### a. Municipal Liability

Louisville Metro argues that the § 1983 claims against it must be dismissed because Albin has not alleged that the municipality itself is responsible for a constitutional violation. (*Id.*, PageID # 57) "A municipality is not liable under § 1983 for the action[s] of one of its employees unless it can be established that the employee's action was the result of an official municipal policy." *Gordon v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:08-CV-29, 2011 U.S. Dist. LEXIS 19631, at *22 (W.D. Ky. Feb. 25, 2011) (citing *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). Here, Albin's complaint points to no official Louisville Metro policy or custom and contains no allegation that any violation of his constitutional rights was the result of such a policy or custom. "Accordingly, [his] § 1983 claim against Louisville Metro will be dismissed." *Gordon*, 2011 U.S. Dist. LEXIS 19631, at *22.

### b. Supervisory Liability

Conrad likewise contends that there is no allegation that he was directly involved in the purported violations of Albin's constitutional rights. (D.N. 6, PageID # 49) "The theory of supervisory liability under 42 U.S.C. § 1983 permits supervisors to be held liable for their subordinates' unconstitutional conduct." *Penman*, 2018 U.S. Dist. LEXIS 201314, at *13 (citing *Casey v. Sanders*, No. 7:17-CV-145-KKC, 2018 U.S. Dist. LEXIS 103949, at *16 (E.D. Ky. June 21, 2018)). "However, it is well settled law that '[g]overnment officials may not be held liable for unconstitutional behavior of their subordinates under the theory of respondeat superior.'" *Id.* at *13-*14 (quoting *Iqbal*, 556 U.S. at 676). "Thus, supervisory liability is applicable only to limited circumstances in which the plaintiff has established three things: (1) unconstitutional conduct on behalf of the subordinate; (2) 'active unconstitutional behavior' on behalf of the supervisor; and

(3) a 'causal connection between the defendant's wrongful conduct and the violation alleged.'" *Id.* at *14 (quoting *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006)).

Albin has failed to make the necessary showing because his complaint contains no allegations or facts suggesting that Conrad was actively engaged in any unconstitutional behavior. (*See* D.N. 1-2, PageID # 10-18) Moreover, Albin's complaint does not allege facts showing that Conrad was involved in the officers' purported unconstitutional conduct. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (finding that in order for liability to attach to the supervisor for the actions of his subordinate, the plaintiff must show that the supervisor "otherwise encouraged or condoned" the actions of the subordinate, rather than "play[ing] a passive role in the alleged violation or show[ing] mere tacit approval of the goings on." (citations omitted)). "Merely stating a conclusory legal theory, without any factual allegations as to any of the constituent elements of the legal cause, is insufficient to survive a motion to dismiss for failure to state a claim." *Cox v. CTA Acoustics, Inc.*, No. 6:18-cv-114-CHB, 2018 U.S. Dist. LEXIS 146789, at *10 (E.D. Ky. Aug. 29, 2018). Because Albin's § 1983 claims are devoid of factual allegations as to Conrad, they must be dismissed. *Id.* at *12.

   2. **State-Law Claims**

Albin has likewise failed to make even a threshold argument as to Conrad's liability under state law. As explained above, the facts portion of Albin's complaint contains no mention of Conrad, his involvement in the officers' actions, or his hiring, supervision, or training of the officers. (D.N. 1-2, PageID # 10-16) Albin's specific allegations under his state-law claims are equally devoid of facts related to Conrad's conduct. For his state-law claims, Albin argues that Conrad

as the individual Defendants' employer and supervisor, [is] liable for Defendant Meek, Defendant Pugh, and Defendant Unknown Officer's negligence and breach of duties by principles of agency and/or directly[;]

. . . .

[was] negligent in [his] supervision . . . [and] hiring and training [of the individual Defendants][;]

. . . .

[is] liable for the actions of the other Defendants under the doctrine of respondeat superior, as well as directly for the aforementioned negligence[;]

. . . .

owed a duty to [Albin] to use ordinary and reasonable care in properly hiring, training, and supervising [the individual Defendants], and [he] breached that duty by failing to use ordinary and reasonable care in hiring, training, and supervising [them] and allowing the aforementioned events to take place[;] [and]

. . . .

[is] liable [for malicious prosecution] under the doctrine of respondeat superior.

(D.N. 1-2, PageID # 21-23) "Such conclusory and 'unadorned, the defendant-unlawfully-harmed-me accusation[s]' are exactly the type of claims disapproved of by the Supreme Court and as such cannot state a claim upon which relief can be granted." *Cox,* 2018 U.S. Dist. LEXIS 146789, at *12 (quoting *Iqbal*, 556 U.S. at 678). "[T]he total lack of facts" as to Conrad and his conduct "makes it such that the complaint fails to state any claim upon which relief can be granted." *Id.* at *10. Accordingly, the claims against Conrad—even when read in the light most favorable to Albin—cannot survive the defendants' motion to dismiss.

**III.**

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Louisville Metro and Conrad's motion to dismiss (D.N. 4) is **GRANTED.** Albin's claims against Louisville Metro Government and Steve Conrad (Counts I, II, V, VI, and VII) are **DISMISSED**. The Clerk of Court is **DIRECTED** to terminate Louisville Metro Government and Steve Conrad as defendants in the record of this matter.

March 19, 2020

**David J. Hale, Judge
United States District Court**